**STARK & STARK, P.C.**
993 Lenox Dr, Building Two
Lawrenceville, NJ 08648
609-895-7362
Martin P. Schrama, Esq.
Stefanie Colella-Walsh, Esq.
John Sakson, Esq.
mschrama@stark-stark.com
scolellawalsh@stark-stark.com
jsakson@stark-stark.com

**Carr & Carr, Attorneys At Law**
4416 South Harvard Ave.
Tulsa, OK 74135
918-747-1000
Michael E. Carr, Esq. (pro hac vice forthcoming)
mcarr@carrcarr.com

*Attorneys for Plaintiff Norma Gaguancela*

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NORMA GAGUANCELA,<br><br>　　　　　　　　　　Plaintiff,<br><br>vs.<br><br>SHARKNINJA OPERATING, LLC.,<br><br>　　　　　　　　　　Defendant. | **Document Electronically Filed**<br><br>**Civil Action No.:**<br><br>**COMPLAINT AND JURY DEMAND** |

　　　　Comes now the Plaintiff, Norma Gaguancela, and for her causes of actions against the Defendant, and states as follows:

## THE PARTIES

1. Plaintiff Norma Gaguancela (hereinafter "Plaintiff") currently resides at 197 Canterbury Ave, North Arlington, Bergen County, NJ.

2. Defendant Shark Ninja Operating, LLC (hereinafter "Shark Ninja") is a foreign corporation organized and existing according to the laws of the State of Massachusetts and is engaged in the business of manufacturing, marketing, packaging, designing, assembling and selling blenders. It's headquarters and principal place of business is located at 89 A St Needham Heights, MA.

## STATEMENT OF JURISDICTION

3. This Court has jurisdiction over this lawsuit based on diversity of citizenship under 28 U.S.C. § 1332, as the parties are residents of different states and the matter in controversy, without interests and costs, exceeds the sum or value of $75,000.00.

4. Venue is proper in the District of New Jersey pursuant to provisions of 28 U.S.C. § 1391(a). A substantial portion of the events and omissions giving rise to this lawsuit occurred in this judicial district, and the Court has personal jurisdiction over each of the parties as alleged throughout this Complaint.

## FACTUAL ALLEGATIONS

5. Shark Ninja designs, manufactures, distributes and sells a product titled Nutri Ninja BL482A ("Blender").

6. The Blender is designed for consumer use to blend ingredients.

7. The Blender at issue in this case was designed, manufactured, assembled, packaged, marketed and sold by Shark Ninja.

8. The Blender has three essential components: a powered base unit which contains a high-speed motor ("Base"), a plastic canister that holds the ingredients to be blended ("Canister"), and the blade assembly which screws into the canister and is energized by the base.

9. The Blender is designed to be equipped with a safety interlock device so that the blades cannot become energized without the Canister secured to the base.

10. On July 12, 2022, the Plaintiff attempted to use the Blender to make lemon water. Plaintiff placed cut up pieces of lemon and water into the Canister. Plaintiff then secured the blade assembly onto the Canister. Plaintiff then secured the Canister with the blade assembly onto the Base.

11. Plaintiff then pressed a button on the control panel of the Base to start the blending process.

12. After the ingredients began to blend, pressure began to build up in the Canister. The pressure intensity inside the Canister and the inadequate threads on the blade assembly caused the Canister to come off the base, leaving the motorized blades exposed and spinning and causing them to injure Plaintiff's fingers.

**FIRST CAUSE OF ACTION**

<u>Strict Product Liability</u>

13. The above captioned paragraphs are incorporated herein as if fully set forth.

14. The Blender produced by Shark Ninja was defective in its design and/or manufacture at the time it left possession of Shark Ninja. Plaintiff believes that the Blender was defective in that, among other things, it failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner and/or there was a risk of danger in the Blender that outweighed the benefits of its design. Also, the Blender's

risks or dangers outweigh its usefulness and a reasonably careful manufacturer or seller would not have sold the Blender in the form in which it was sold. The Blender could have been designed in such a way that would have reduced or prevented Plaintiff's injuries without degrading the Blender's utility.

15. The Blender was not reasonably safe, fit or suitable for its intended purpose because of the Blender's manufacturing and/or design defects.

16. The Blender's manufacturing and/or design defects proximately caused Plaintiff's injuries. The primary manufacturing and design defects are that:

    a. The Blender generated and contained an excessive amount of pressure;

    b. The threads designed to hold the Canister onto the blade assembly were inadequate in keeping the Canister secured to the blade assembly;

    c. The Canister was allowed to come off the Base during use, leaving motorized blades exposed to Plaintiff's fingers;

    d. Other defects that will be discovered through the discovery process.

17. The Blender contained these manufacturing defects and designs defects when it was designed, manufactured, sold and otherwise placed into the stream of commerce by Shark Ninja. These defects were a substantial factor in causing Plaintiff's harm. The Blender did not perform as safely as an ordinary consumer would have expected it to perform when used or misused in an intended or reasonably foreseeable way.

18. The Blender and its component parts, designed, manufactured, assembled, tested, installed, inspected, sold, distribution, repaired, maintained, or modified by Shark Ninja was not reasonably fit, suitable or safe for its intended purpose or use in that it deviated from design specifications, formulae or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae and/or

4854-7406-2155, v. 1

failed to contain adequate warnings or instructions and/or was designed in a defective manner in violation of N.J.S.A. 2A:58C et. Seq.

19. The Blender was also defective because Shark Ninja failed to adequately warn or instruct the Plaintiff of the potential risk of the Canister coming off the base of the Blender during use.

## SECOND CAUSE OF ACTION

### Negligence

20. The above captioned paragraphs are incorporated herein as if fully set forth.

21. Shark Ninja was negligent in its design, manufacture, and assembly of the Nutri Ninja Blender. Specifically, Shark Ninja was negligent in that it failed to design and manufacture the Blender in a way that would prevent the canister from coming off the motor base during use thereby exposing the Plaintiff to motorized spinning blades, including but not limited to, manufacturing stronger and more durable threads on the blade assembly.

22. Shark Ninja owed a duty to the Plaintiff to exercise ordinary care in designing, manufacturing, testing, warning, selling and distributing the Blender.

23. Shark Ninja breached this duty by designing, selling, promoting and distributing the Blender with dangerous manufacturing and design defects and also by failing to warn the Plaintiff of these defects. The breach of these duties proximately caused the Plaintiff, a foreseeable user of the Blender, to sustain injuries and was a substantial factor in causing the Plaintiff's harm. Shark Ninja also breached this duty by failing to recall the product when it discovered these defects. These defects were discovered by the Defendant before the date the Plaintiff was injured.

4854-7406-2155, v. 1

24. The defects stated herein existed at the time the Blender left the control of the Defendant Shark Ninja.

## PRAYER

25. The Blender was the proximate cause of Plaintiff's damages. Shark Ninja is therefore liable for the following damages in excess of $75,000.00.

    a. Past and future medical expenses;

    b. Past and future physical pain and suffering;

    c. Past and future mental pain and suffering;

    d. Permanent injuries;

    e. Physical impairment;

    f. Loss of enjoyment of life;

    g. Punitive damages;

    h. Other damages to be set forth after discovery is completed.

26. The Defendant's actions amounted to malicious and/or willful and wanton disregard, justifying an award of punitive damages. Plaintiff seek punitive damages in excess of $75,000.00.

## DEMAND FOR A TRIAL BY JURY

27. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a jury trial as to all issues and defenses.

4854-7406-2155, v. 1

## LOCAL RULE 11.2 CERTIFICATION

Pursuant to Local Rule 11.2, it is hereby stated that the matter in controversy is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding to the best of our knowledge and belief.

STARK & STARK, P.C.

By: /s/ Martin Schrama, Esq.
Martin Schrama, Esq.
Stefanie Colella-Walsh, Esq.
John Sakson, Esq.
993 Lenox Dr, Building 2
Lawrenceville, NJ 08648
609-905-7308 (phone)
609-896-0629 (fax)
mschrama@stark-stark.com
scolellawalsh@stark-stark.com
jsakson@stark-stark.com
**Attorneys for Plaintiff**

/s/ Michael E. Carr, Esq.
Michael E. Carr, Esq. (pro hac vice forthcoming)
4416 South Harvard Ave.
Tulsa, OK 74135
918-747-1000 (voice)
918-747-7284 (fax)
mcarr@carrcarr.com
**Attorney for Plaintiff**